## BD of ED of ALBANY VILLAGE v STATE ex BROWN

Ohio Appeals, 4th Dist, Athens Co
Decided Nov 7, 1930

R. D. Williams and Wooley & Rowland, all of Athens, for Bd of Ed.

Charles D. Fogle and Emmit Keenan, both of Athens, for Brown.

**MAUCK, J.**

The rights of the parties are determined by 7730 GC. That section provides that upon a petition filed with the local board of education between May 1 and August 1 of any year, signed by the parents or guardians of twleve children between the ages of seven and fifteen, living in the district and enrolled in school, whose residences are nearer to the suspended school than to any other school of the district, asking that the suspended school be reopened, the board of education shall reopen such school.

> "provided there is a suitable school building in the territory of such suspended school as it existed prior to suspension".

The section seeks to take the government of the schools from the board of education and vest it in the volunteer residents to the extent indicated and under the conditions prescribed.

In the unreported case of **Board of Education of Circleville v. State ex rel Moody** this court made the following observations:

> "It will be seen that an extraordinary power is conferred upon what may well be a very small minority of a particular district to override the judgment of a board of education, elected for the purpose of administering the school laws and officially charged with all of the responsible duties pertaining to that office. It seems clear that when a group that may be as small as two or three householders, charged with no particular responsibility and not acting under oath, by simply affixing their signatures to a proper petition may subvert the educational policy established by the public officials charged with formulating and carrying out such policy, such group should fully and literally comply with all the provisions of the statute conferring the right sought to be enforced."

The evidence in the case at bar shows that the parents of more than twelve children between the ages of seven and twelve petitioned for the restoration of this school,

and the record shows that those children were enumerated children in the Golden District. Enumerated children, however, are not enrolled children, and what was said by this court in the Moody case already referred to is equally pertinent here:

"In this action it may be proper to point out that evidence was offered that all of the children concerned were among the enumerated school children of the district. An enumerated child, however, is not an enrolled child. Enumerated children include all those between the ages of five and eighteen described in 7794 GC. Enrolled children embrace only those mentioned in 7784 GC."

Enumerated children include all children eligible so far as age is concerned to admission to the public school. Enrolled children are those who have actually been in attendance at a particular school during the previous year. For the most part the two groups are identical, but an enumerated child who during the previous year has attended a private or parochial school, or who for physical or other reasons has attended no school, is not an enrolled child and can not be considered in applying the provisions of 7730 GC.

The testimony in this case overlooked the distinction referred to and was insufficient for that reason to sustain the award of the writ of mandamus. This conclusion, however, would only lead to delay and a retrial with attending expenses, and the situation seems to require a further examination of the requirements of the section referred to.

The statute provides that upon the filing of the requisite petition the board of education shall reopen the school provided there is a suitable school building in the territory of the suspended school. No standard is fixed for determining what is or what is not suitable.

In awarding the writ of mandamus in this case it appears that the trial court was in error in two respects. The first was in assuming that the determination of whether or not the particular school building was suitable was primarily a judicial question. The second mistake was in applying an erroneous standard in determining what a suitable building is. Upon the first question it will be observed that the board of education is to reopen the school provided there is a suitable school building. Certainly the primary duty in determining the suitability of the building rested upon the board of education. That is the body charged by law with the duty of building, repairing and furnishing school houses. 7620, 7666 GC. It is of necessity the board that must in the first instance determine the suitability of an existing building. The power of the court to compel the performance of an act by a board is limited to those acts which the law especially enjoins on the board. Sec. 12283 GC. The writ only issues when it is clearly shown that the board complained of\ has been guilty of a plain dereliction of duty. State ex rel v. Board of Education, 104 Oh St 360. The real question before the trial court was whether the defendant board of education had abused its discretion in its determination that the school building in question was not a suitable one.

In the second place, the court in reaching the conclusion that the building in question was a suitable one took as a standard of suitability the worst school house that the county had and concluded that as a particular school building was used in the preceding year it was necessarily, to use the court's expression, "usable now because it was usable then." This was tantamount to holding that the statute in question compelled the reopening of the suspended school in case there was any school building in the territory that had been used the previous year or was as nearly fit for use as the worst building in that or any other district in the county. The court, however, did not adhere to this standard. The testimony tended to show that the Hebbardsville building and the Golden building were equally suitable or equally unsuitable. The Judge visited the Hebbardsville building and ascertained from the use of his own senses that the Hebbardsville building was not suitable, a fact that could scarcely have been determined in that way from the testimony alone if the test employed in this case was followed. This is pointed out because it illustrates the fact that the suitability of the building is in the first instance not a judicial question. It involves many factors and many comparisons. The board charged with the responsibility of determining the suitability of the building is much more competent than is the court to pass upon that question.

It may be suggested that to require the relators to show that the board of education has abused its discretion in determining the building to be unsuitable is to emas-

culate 7730 GC and deprive those who want to retain the old school from any remedy in any case. That is not true. If the school building proposed to be abandoned has been built pursuant to the provisions of the building code, as modern school buildings are, it would be a clear abuse of discretion for the board of education to say it was not a suitable building. Further, if the building to which the pupils were to be transported were no better than the building sought to be abandoned it would be an abuse of discretion for the board of education to say that the abandoned building was not suitable inasmuch as their use of the other building would be evidence that they deemed it suitable. Other circumstances might be present that would show that the board of education was arbitrarily abandoning a school building and in so doing exercising no discretion at all, thus enabling remonstrants to compel the reopening of the old building. In the absence of some showing the judgment of the local board, involving as it does questions of lighting, heating, ventilation, sanitation and other factors that enter into the determination of the suitability of a building for a particular purpose, will not be interfered with by a court. It was said in **Brannon v. Board of Education, 99 Oh St 369:**

> "A court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board upon any question it is authorized by law to determine.
>
> A court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an abuse of discretion, or for fraud or collusion on the part of such board in the exercise of its statutory authority."

The quotation is taken from a case in which an attempt was made to control the action of a board of education by injunction, but it is cited with approval in a mandamus case and is equally pertinent where that extraordinary writ is sought.

The judgment in this case is reversed, first, because it was incompetent to grant any relief upon a showing that there were twelve or more enumerated children in the affected territory when the requirement of the statute was that there be that number of enrolled pupils, and for the further reason that it was not shown, nor attempted to be shown, that the board of education abused its discretion in the abandonment of the building in the Golden District.

The judgment is reversed and the case remanded for further proceedings according to law.

Middleton, PJ, and Blosser, J, concur.