**CHRISTMAN et v STATE ex NORRIS et**

Ohio Appeals, 7th Dist, Monroe Co

No 262.   Decided Dec 10, 1932.

John K. Sawyers, Jr., Prosecuting Attorney, Woodsfield, and W. B. Moore, Lisbon, for respondents.

Matz & Matz, Woodsfield, for relators.

GARVER, LEMERT and SHERICK, JJ, (5th Dist) sitting.

SHERICK, J.

We have read with interest and approval the opinion of this court rendered in the first action. That court therein pointed out that §7620 GC empowered the Township Board of Education to repair its school properties, and we note that as far back as April 4th, 1930, that a State Departmental order required the respondents to make certain repairs which were minor in character. The proof shows that such could have then and now be made at a cost of less than $100.00. The Board was again advised by the State Department to make these repairs, and the respondents neglected and refused to make these repairs.

The Seventh District, in disposing of this feature of the case, observed that the Board would not be heard to assert its own neglect as a defense for its abandonment of

this school. It not only disregarded the statutory provision, but refused to make these minor repairs ordered by the State Department. They say there was a lack of funds, yet the Board had moneys with which to buy busses and employ drivers.

The statute (§7730 GC) recites:

"Upon petition filed with a local Board of Education between May 1 and Aug. 1 of any year, signed by the parents or guardians of twelve children between 7 and 15 years of age, living in the district and enrolled in school, where residences are nearer to a certain school, which has been suspended, than to any other school of the district, asking that such suspended school be reopened, the local board of education shall reopen such school for the ensuing school year, provided there is a suitable school building in the territory of such suspended school as it existed prior to suspension."

We find from the evidence in this case that the resident enrollable children in this sub-district, near forty in number, are much nearer to the Neuhart School than the Kerr School, or any other school in the Township district, and that the Neuhart School building is a suitable one. It was suitable for the school year of 1931-32 and the Department so held by its first repair order made.

In view of these conceded and determined facts, we hold that the word "shall" in the statute means must, and the statute is therefore mandatory, and the caprice and willful neglect of the respondent Board to perform its plain duty to make minor repairs, cannot afford it a legal excuse for non-compliance with this second command of the statute enjoined upon it to reopen the school for the ensuing year; that is, this present school year of 1932-33. A Board of Education may not create a situation of its own neglectful making, and then, assert its non-feasance as a defense to a second statutory command.

The respondents say that this action must be determined upon the law as announced in **Board of Education of Albany Village School District of Athens Co. v State ex Brown et, 37 Oh Ap 453, (9 Abs 38),** and **State ex Dennison v Board of Education, 12 Abs 529.** Reverting to the first named case, we quote therefrom:

"A court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an abuse of discretion, or for fraud or collusion on the part of such board in the exercise of its statutory authority."

This is sound law. Now, the respondents contend from these cases that the judgment of the Board was based in part upon other matters than nearness and suitability; that is, the questions of lighting, heating, ventilation, sanitation and other factors must be taken into consideration as having prompted the Board in the exercise of its discretion.

If this were true in the instant case, the argument would be well made. But when we come to peruse the cross-examination of the Board members who testified, we find that their judgment was arrived at on the exclusive features of a lack of funds, the unfitness of the building due to lack of repairs, and the last, which seems to have been all-important, that State aid was necessary, and that the State Department was the Czar of that fund, and its command must be obeyed.

We unhesitatingly reach the conclusion that when a Board of Education is so dominated by the State Superintendent of Schools that it is unable to exercise an independent judgment, and must and does substitute its discretionary duty to the arbitrary command of another, in a statutory power conferred and imposed on it to be independently exercised, that such supine action resulting thereon is a failure to exercise any discretion whatsoever, and which amounts to collusion, as is apparent in this case, to deny to the relators and their children the rights guaranteed them by §7730 GC, and that the failure of the Board to exercise any discretion is an arbitrary, and unwarranted act and an abuse of discretion of the most flagrant kind.

Perhaps what we are hereinafter about to say is unnecessary for a determination of this action, nevertheless, we do confess our inability to refrain from further comment.

The respondents maintain that the State Department's order of abandonment, and threatened withdrawal of State aid is a good defense. That such is true by reason of the powers conferred by §7596 GC in the

State Director of Education to withhold such aid.

We are of opinion that this is not a defense to this action. This section provides:

"If upon the examination of the situation in any school district, the director of education is satisfied that any adjustments, or changes in local school policy and administration should be made as a condition of participation in the state educational equalization, he may order such adjustments and changes to be made.

For this purpose, he shall have power to order any local board of education, or any county board of education to exercise any power of whatsoever character in them vested by law, and such order shall be complied with forthwith, as a condition precedent to any participation in such fund."

We are not of opinion that this power vested in him is an autocratic power to do all things, other sections of the statutes notwithstanding. It does not repeal directly or by implication those sections of the statutes which repose power in the people to resist arbitrary and undesired consolidation, centralization or abandonment. Such a power in an officer should be and is wisely limited, for this is a government of the people, by the people, and for the people, and not one of despotic power in an individual appointed to serve them.

We note that §7596 GC was enacted in 1929, see 113 O L 259. If the powers therein granted are as claimed by the respondents, we direct attention to the act of the next legislature in 1931, appearing in §7795-1 GC, 114 O L 843 (849) entitled, "Application for participation in state educational equalization fund; sinking fund, interest and bond retirement levy; inspection and examination by director of education." It is therein provided what a board of education shall do, and perform in order to secure State aid, and this section contains this italicized provision:

"Provided, however, that no such application shall be refused if the electors of such school district have voted affirmatively on the proposition required to be submitted to them by §§5625-18a to 5625-18c, GC inclusive, and if the board of education in making the application has levied all taxes permitted by law, and under such vote of the electors."

It being, therefore, subsequently enacted "that no such application shall be refused" for state aid, if certain requirements are complied with, as the record in this case shows has been done. We hold this clause to be a limitation on the claimed power of the Director of Education embodied in §7596 GC, if any such had previously existed. Application of the well recognized rule of statutory construction, in that a later section dealing with the same special subject matter and limiting the same, must have precedence over the prior general enactment, supports this court's conclusion.

Further digressing, we are led to say, from the facts in this case, that without question, a preconceived plan of consolidation of Center Township schools had been entered into, between the State Department of Education and the respondents, save Board member Fisher. This plan, wise or unwise as time may disclose, seems to have been persisted in without regard to the rights of the people of Sub-district No. 12, and the prior order of this court, and of the Court of Common Pleas. This action was arbitrary, without sanction of law, and verges on the contemptuous.

In conclusion, we would further remark that it is our view that it was the legislative intent and policy to aid weak school districts and to enable the children therein to obtain an education, when that district has fully complied with the required provisions prerequisite to obtain State aid, and not to penalize the children of the district by withholding State aid as a correctional method of rebuking the parents, and guardians of those children for their failure to see the light of reason, as seen by an appointed administrative officer. To so permit, would sanction the robbing of Peter to pay off Paul.

We are of opinion that the judgment of the trial court goes a bit too far, in view of the last paragraph of §7730 GC. We, therefore, modify the judgment entered therein rendered by striking out that part thereof which makes the order perpetual, after the ensuing year, and affirm the judgment as modified and remand the cause.

GARVER and LEMERT, JJ, concur in the judgment.